IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY MARSHALL #183459
        Plaintiff               :

        v.                      :   CIVIL ACTION NO. CCB-09-1966

ROBERT FRIEND, et al.        :
        Defendants

**<u>MEMORANDUM</u>**

On July 24, 2009, Western Correctional Institution prisoner Gregory Marshall filed a civil rights action seeking money damages and injunctive relief mandating his transfer to another Maryland Division of Correction facility where he could obtain appropriate medical treatment.[1] Marshall claimed that on June 13, 2009, correctional defendant Robert Friend forced him to double-cell with a prisoner Marshall believed to be a gang member.[2] Four days later, on June 17, 2009, the resulting stress allegedly caused Marshall to vomit blood. Marshall claims that while awaiting treatment in the prison medical unit, he continued to vomit and was unable to

---

[1] As Marshall filed this action less than five weeks after the events at issue, it is apparent he did not fully exhaust administrative remedies through the prison grievance system. Title 42 U.S.C. § 1997e(a) requires "proper exhaustion," which means "complet[ing] the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock,* 549 S.Ct. 199, 127 S.Ct. 910, 922-23 (2007) (quoting *Woodford v. Ngo,* 548 U.S. 81, 88 (2006)). Exhaustion of all administrative remedies means that a prisoner must use all steps that the Department of Corrections requires and must follow such steps properly. *See Woodford*, 548 U.S. at 90. The issue before the court is whether Maryland inmates must exhaust administrative remedies under the DOC grievance process regarding complaints against private healthcare contractors and their employees. The court finds state court evaluation of the same issue instructive, as it was fully briefed and examined by the Maryland high court. In *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238 (Md. 2000), the Court of Appeals of Maryland reviewed the legislative history of the Maryland Administrative Remedy Procedure ("ARP") process and noted that it permits a prisoner to submit a complaint for grievances against officials or employees of the Maryland Division of Correction and Patuxent Institution through to the IGO. It further observed that ARP grievances must be exhausted through to the IGO before seeking judicial review. Finally, the Court of Appeals noted that the documentation presented in the case establishes that the IGO declines to hear prisoner grievances against private health care contractors. *Adamson*, 359 Md. 266-271. In sum, the Court of Appeals found that the Maryland prisoner administrative remedy process does not encompass complaints against private medical providers under contract with the state. Accordingly, exhaustion shall not be required here.

[2] Marshall's claim concerning the propriety of placing him with a cell-mate was dismissed in an order dated July 30, 2009. *See* Paper No. 4.

communicate with health care personnel, at which time medical personnel refused to treat him[3] and correctional defendants Thomas and Myer[4] placed him in a wheelchair and removed him to a lock-up area known as the "ice box."[5]

Dispositive motions have been filed on behalf of medical and correctional defendants (Paper Nos. 11 and 24), and shall be construed as motions for summary judgment.[6] Plaintiff has opposed the motions.[7] Paper No. 32. Marshall's requests for for money damages and for injunctive relief mandating transfer to another facility for medical treatment can be resolved without hearing. *See* Local Rule 105.6 (D. Md. 2009).

## Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, the discovery and disclosure materials on file, and any affidavits, if any, show that there is no genuine issue as to any material fact and that the movant entitled to a judgment as a matter of law.

---

[3] Initially, Marshall claimed that Dr. Tessema and "Nurse Judy" refused to treat him. Paper No. 1 at 6. He now seeks to dismiss Dr. Tessema and amend his claim to include Dr. Hubert Mickel as the individual who denied him care. Paper No. 29. The dismissal of defendant Tessema and substitution of defendant Mickel shall be granted. "Nurse Judy," now identified as Nurse Corwell (Paper No. 32-1 at 3), has not been served; however, for reasons apparent herein, had she been served, she would be entitled to suimmary judgment in this case.

[4] In his opposition response, Marshall identifies correctional defendant Myer as Sgt. Femi. Paper No. 32-1 at 3. He also indicates that correctional defendants Friend, Thomas, and Femi were responsible for taking him to the "ice box."

[5] Marshall attempts to amend his complaint to allege that the medical problems at issue here, including a mouth injury and a sore leg, originated on June 7, 2009, when Officer Layton assaulted him, allegedly because of a complaint Marshall had filed against Nurse Hetty Charleen Trenum. Paper No. 32-1 at 1-3. While Marshall is free to file any appropriate action concerning the alleged June 7, 2009, assault, the incident will not be examined here.

[6] Security director Hejirika has not been served. Marshall fails to allege specific allegations against Hejirika and, accordingly, this defendant shall be dismissed from suit. Similarly, Marshall fails to delineate a claim against Psychologist Margaret Reeves, who also is entitled to dismissal.

[7] Marshall's request for additional time to file an opposition (Paper No. 31) is granted nunc pro tunc to March 26, 2010. His request for appointment of counsel contained in Paper No. 32 is denied pursuant to 28 U.S.C. § 1915(e)(1) and *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

A prisoner is entitled to receive reasonable treatment for his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976). Failure to provide treatment, when indicating a "deliberate indifference to serious medical needs of prisoners" results in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth Amendment." *Id*. at 104. Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. *See*

*generally, Farmer v. Brennan*, 511 U.S. 825 (1994); *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995).

The record reveals that a sick-call slip complaining of "mouth bleeding and leg swelling up. (Hit)" was received by medical personnel on June 13, 2009. Paper No. 24-3 at 2. On June 16, 2009, Nurse Trenum examined Marshall and found no bleeding or visible blood in the mouth and no swelling in the left leg. *Id.* at 2. Marshall was given Ibuprofen, topical ointment, and a stool softener, and referred for a follow-up with a dentist. *Id.* at 3-4; *see also* Paper No. 11, Exhibit A, para. 4. On June 17, 2009, Medical Director Hubert Mickel, M.D., attempted to treat Marshall. Marshall was non-responsive during the appointment and treatment was not rendered. Paper No. 11, Exhibit A, para. 5. Marshall's statement that he was vomiting blood and unable to speak during the appointment is not reflected in the medical record. *Id.*, Exhibit B at 5. While Marshall appears to have been taken to lock-up after attempts at treatment proved futile, he was released from lock-up later that day. Paper No. 24-4 at 2.

Based on the uncontroverted record evidence, there is simply no showing that Marshall was denied medical care in June of 2009, or that he must be transferred to another facility to receive appropriate care. Injunctive relief shall be denied and this case closed by way of a separate order.

  June 9, 2010                                                                           /s/
Date                                                                             Catherine C. Blake
                                                                                United States District Judge